# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| LAURA ACHTERBERG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 5:16-CV-06097-DGK |
| | ) |
| ALBAUGH, LLC, EMPLOYER SOLUTIONS STAFFING GROUP II, LLC, and LABTECH SPECIALTY STAFFING COMPANY, | ) ) ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This action arises out of Plaintiff Laura Achterberg's ("Achterberg") work assignment at Defendant Albaugh, LLC's ("Albaugh") plant. Achterberg claims she was wrongfully terminated after she returned from training with the U.S. Army Reserves. Achterberg sued Albaugh, Employer Solutions Staffing Group II, LLC ("ESSG"), and Labtech Specialty Staffing Company ("Labtech"), for violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq.*, and wrongful termination in violation of public policy under Missouri common law.

Now before the Court are the parties' cross motions for summary judgment. Defendants seek summary judgment on Achterberg's wrongful termination claim (Doc. 51). Achterberg seeks summary judgment on four issues related to her USERRA claim (Doc. 55).

For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion, and GRANTS IN PART and DENIES IN PART Plaintiff's motion.

## Undisputed Material Facts[1]

Albaugh operates an herbicide manufacturing facility in St. Joseph, Missouri. The operations include a quality control unit, which tests batches of product to ensure they meet company and regulatory specifications. Upon passing quality control, the product is "released," i.e., shipped, to customers.

Labtech acted as an agent for ESSG and had a staffing agreement with Albaugh. Under the agreement, Albaugh contacted Labtech when it needed new staff, Labtech reviewed its applicant pool, and then selected individuals to interview with Albaugh. If Albaugh selected an individual for a position, the individual was hired by ESSG, and assigned to work at Albaugh. Labtech acted as the human resources contact for ESSG employees working at Albaugh.

Achterberg is a member of the U.S. Army Reserves. In January 2014, she completed a job application with ESSG, at Labtech's office, and interviewed at Albaugh for an open position. On February 2, 2015, she began working as lab technician in the quality control lab. Achterberg reported to Tabatha Proffit, Laboratory Supervisor, and Jonathan House, Laboratory Manager.

New lab technicians at Albaugh undergo a two-week training program before being placed on a permanent shift. Achterberg participated in six days of that training, but did not complete the program. Nevertheless, after the training period, Proffit assigned Achterberg to a permanent shift. After a few weeks of working at Albaugh, Achterberg received orders from the U.S. Army to report for 111 days of training in Texas. Achterberg worked through March 8, 2015, before leaving for her Army assignment. She returned to work on July 6, 2015.

---

[1] The Court excluded asserted facts that were immaterial to the resolution of the pending motion, asserted facts that were not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has included reasonable inferences from material facts not in dispute and proposed facts the opposing party has not controverted properly.

Labtech commonly contacted Proffit to check on the performance of the individuals it placed at Albaugh. On January 30, 2015, Proffit told Labtech through email that assuming Achterberg performs well during training, she would be placed on a permanent shift. In another email exchange on March 4, 2015, Labtech asked Proffit if she had concerns about any of the newly hired individuals. Proffit stated the new hires were generally performing well except for one new hire, who was not Achterberg. Proffit never mentioned to Labtech that Achterberg was a poor performer or that she considered terminating Achterberg.

Proffit stated she considered providing Achtenberg a week of training to refresh her understanding of her job duties after being away with military duty. There are no facts in the record describing what that training included or that it was actually provided to Achtenberg.

Two days after Achterberg returned to work, she recorded a laboratory sample as "out of specification." An "out of specification" reading indicates that the sample tested outside of Albaugh's quality control parameters. When a lab technician receives an out of specification result, they are to report the finding to their lab supervisor. It is disputed as whether Achterberg notified Proffit about the out of specification result the day she recorded it, or the next day.

On July 13, 2015, Proffit talked with House and recommended he terminate Achterberg. On the same day and in response to House's request, Proffit documented the reasons she recommended termination in a letter to House ( the "Termination Letter"). In the Termination Letter, Proffit stated Achterberg performed poorly during the initial two-week training and continued to perform poorly after she was moved to a permanent shift. She noted she was discussing terminating Achterberg prior to her military assignment. Finally, she stated upon Achterberg's return to work, she did not demonstrate a significant improvement in her job

3

performance, claiming she incorrectly logged results, misfiled results, and failed to notify a supervisor after receiving an out of specification test result.

On July 16, 2015, Achterberg was terminated from her assignment at Albaugh. Albaugh maintains she was fired because she failed to report the out of specification lab result. During a deposition, House testified he believed Achterberg was terminated for releasing out of specification product. It is against Albaugh's policy and its standard operating procedures to release product that tests out of specification. Achterberg maintains she did not release out of specification product and Defendants have not put forth any evidence that she did.

Approximately two years prior to Achterberg's termination, an Albaugh employee, in the position of Chemist I, was disciplined for failing to report an out of specification lab result. House was the employee's supervisor and issued that employee a written warning and notice that a repeat offense would result in a suspension. Albaugh has never terminated one of its employees for failing to notify a supervisor of an out of specification test result.

On August 4, 2016, Plaintiff filed a two-count lawsuit alleging: (1) violations of USERRA, 38 U.S.C. § 4301, *et seq.*; and (2) wrongful termination in violation of public policy.

**Summary Judgment Standard**

A moving party is entitled to summary judgment on a "claim or defense" or "part of [a] claim or defense . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). The court must not weigh the evidence or make credibility determinations. *Anderson*, 477 U.S. at 256. Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson*, 477 U.S. at 248).

## Discussion

### I. Defendants' motion for summary judgment is granted in part.

Defendants move for partial summary judgment on Count II, wrongful termination in violation of public policy. Achterberg pursues this claim on two theories: (1) whistleblower; and (2) acting in a manner encouraged by public policy. Achterberg states she is no longer pursuing the whistleblower theory and accordingly, Defendants' motion is GRANTED on that theory.

Under the public policy theory, Achterberg claims she was terminated for acting in a manner encouraged by public policy, namely, serving in the military.[2] The parties agree the "contributing factor" standard applies to public policy claims. *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 86 (Mo. 2010) (holding the contributing factor standard applies to Missouri public policy claims). In addition, Missouri courts allow a plaintiff to pursue a pretext

---

[2] Defendants do not dispute Missouri public policy encourages military service. *See infra* section II.

theory to prove an employment decision was unlawfully motivated. *See Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 49-50 (Mo. Ct. App. 2016).

Achterberg argues there is sufficient evidence in the record for a jury to find her military service caused her termination under both the contributing factor standard and a pretext analysis.

### A. A reasonable jury could find Achterberg's military service contributed to her termination.

Achterberg argues a reasonable jury could find that her military service contributed to her termination because: (1) the timing and duration of her military service interrupted her ability to learn the job; and (2) she was not properly retrained after she returned to work, which ultimately caused the conduct she was terminated for.

Under the contributing factor standard, "it is immaterial whether [the defendant] had other non-discriminatory motives for [its] actions: if [the plaintiff's] protected activity was even one contributing factor in [the employer's] decision to take an act of reprisal against [the plaintiff], then there was an unlawful retaliation." *Walsh v. City of Kansas City, Mo.*, 481 S.W.3d 97, 108 n.6 (Mo. Ct. App. 2016). Thus, for Achterberg to prevail on her claim under this theory, she must show that her military service was a contributing factor in the decision to terminate her assignment at Albaugh.

Achterberg left for military duty after working at Albaugh for approximately four weeks and was absent for almost four months, four times the amount of time she had worked at Albaugh. Achterberg failed to report the out of specification result on her second day back to work. As explained in section II.A, there is a dispute of fact as to whether Defendants properly retrained Achterberg after she returned to her position. A reasonable jury could find these facts support a finding that Achterberg's military service was a contributing factor in Albaugh's decision to terminate her. Thus, summary judgment on this issue is DENIED.

### B. A reasonable jury could find Achterberg's circumstantial evidence establishes her wrongful termination claim.

Actherberg also argues under a pretext analysis, there is circumstantial evidence establishing a causal link between her military service and her termination.

"There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). A plaintiff may show pretext by "showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). An employee can also carry the burden of showing pretext by showing that the employer's justification for the adverse action was "unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

First, Achterberg argues failing to notify a supervisor of an out of specification result is not a terminable offense at Albaugh by comparing herself to a similarly situated employee. Achterberg points to the Albaugh employee who was given a written warning for failing to notify a supervisor of an out of specification result. The Court finds the Albaugh employee is not a similarly situated because this individual was an employee of Albaugh, not a staffing company, and had a different job title. *See Rebouche v. Deere & Co.*, 786 F.3d 1083, 1088 (8th Cir. 2015) (finding employee with different job title and pay grade was not similarly situated). Thus, Achterberg's argument that she was treated more harshly than a similarly situated employee fails as a matter of law.

Notwithstanding this finding, the Court finds a reasonable jury could find Achterberg's other circumstantial evidence establishes a causal link between Achterberg's military service and her termination. The facts state Defendants have proffered several reasons for Achterberg's termination, House stated Achterberg was fired for releasing out of specification product rather than for failing to notify a supervisor, the Termination Letter lists several reasons for Achterberg's termination, and Proffit stated she initially wanted to terminate Achterberg for tardiness. A jury could also find Proffit's action to moving Achterberg to a permanent shift and her failure to mention a performance problem to Labtech, evidences that Achterberg did not have a performance problem during training. In addition a reasonable jury could find Defendants deviated from Albaugh's company policy when they terminated her because the policy does not state that failing to notify a supervisor of an out of specification test result is a terminable offense.

In summary, Defendant's motion for summary judgment on Count II is GRANTED as to the whistleblower theory. Defendant's motion is DENIED as to Plaintiff's contributing factor and pretext theories of wrongful termination.

**II. Achterberg's motion for partial summary judgment is granted in part.**

Achterberg moves for partial summary judgment on four issues on Count I: (1) Albaugh was Achterberg's employer; (2) Albaugh failed to retrain Achterberg; (3) Achterberg was not fired for cause; and (4) Missouri public policy encourages military service. Defendants do not dispute issues (1) and (4) and accordingly, summary judgment is GRANTED as to those issues. Defendants dispute issues (2) and (3) and the Court discusses each in turn.

## A. There is a dispute of fact as to whether Albaugh provided retraining as required by USERRA.

Achterberg argues Albaugh failed to make reasonable efforts to retrain her when she returned to work, as required by the USERRA. *See* 38 U.S.C. § 4313(a)(2). If a service member is absent from work for more than ninety (90) days, then upon her return to work, she "must be reemployed in the position in which . . . she was employed on the date that the period of service began . . . ." 20 C.F.R. § 1002.197(b). Then, "[t]he employer must make reasonable efforts to help the employee become qualified to perform the duties of this position." *Id.* "The term 'reasonable efforts' . . . means actions, including training provided by an employer, that do not place an undue hardship on the employer." 38 U.S.C. § 4303(10); 20 C.F.R. § 1002.5(i).

Defendants first argue they were not required to retrain Achterberg because she stated her initial training was adequate, she stated she did not need any additional training when she returned from military leave, and she knew she needed to report out of specification results. Second, Defendants state Proffit provided Achterberg a "refresher week" of training when she returned. Achterberg argues Defendants' vague reference to a refresher week of training is not enough meet the requirements under USERRA.

The Court finds there is a dispute of material fact as to whether Defendants made reasonable efforts to help Achterberg become qualified for her position through training or other efforts, after she returned from military service, and thus, summary judgment on this issue is DENIED.

## B. Whether Achterberg was terminated for cause is a question for the jury.

Achterberg seeks a summary judgment ruling holding that she was not fired for cause because Albaugh's actions were not reasonable and she did not have proper notice that her conduct was a terminable offense.

Under USERRA, a service member may not be discharged from employment except for cause if that "person's period of service before the reemployment was more than 30 days but less than 181 days." 38 U.S.C. § 4316(c)(2). "In a discharge action based on conduct, the employer bears the burden of proving:" (1) discharge was reasonable for the conduct in question; and (2) the employee had notice, express or implied, that the "conduct would constitute cause for discharge." 20 C.F.R. § 1002.248(a); *see Rademacher v. HBE Corp.*, 645 F.3d 1005, 1012 (8th Cir. 2011). An "employer meets its burden of proof if it 'satisfies some objective standard of cause.'" *Id.* at 1013 (quoting *Carter v. United States*, 407 F.2d 1238, 1245 (D.C. Cir. 1968)).

### 1. There is a dispute of material fact as to whether Achterberg's termination was reasonable.

Achterberg claims her termination was not reasonable because Albaugh failed to retrain her, contributing to the cause of her termination.[3] Defendants counter that it was reasonable to terminate Achterberg because shipping out of specification product could subject Albaugh to liability under various statues and regulations.

The Court finds there are issues of fact as to whether Achterberg's termination was reasonable. A reasonable jury could find termination was unreasonable if they find Achterberg's training, or lack thereof, contributed to the error she was terminated for, or they could find, given the liability at stake, termination was reasonable. Accordingly, summary judgment as to this issue is DENIED.

### 2. Achterberg did not have notice her conduct could result in termination.

Finally, Achterberg argues she had no notice that her conduct could result in termination. For purposes of USERRA, notice to the employee can be "express or fairly implied," and

---

[3] She also argues her termination was unreasonable because, based on Albaugh's past disciplinary actions, failure to notify of an out of specification result warrants a written warning. The Court addressed Albaugh's decision to terminate versus issue a written warning in its analysis of Achterberg's circumstantial evidence of pretext. *See supra* I.B.

forewarning is not required. *To v. Bancorp*, 651 F.3d 888, 894 (8th Cir. 2011). An employee has notice if the employee received a handbook that stated she could be fired for the conduct she engaged in. *Id.*

Defendants argue that because Achterberg understood she was required to report out of specification results, her experience constitutes implied notice. However, Defendants have not put forth any evidence that Achterberg's experience informed her that this conduct was terminable.

There is no evidence in the record stating that not reporting an out of specification result could result in termination. It is undisputed that the operating procedures do not address a failure to notify an out of specification test result. There is no employee manual, from Albaugh or Labtech, which states this conduct could result in termination. Thus, the undisputed facts demonstrate Achterberg did not have proper notice that her conduct could result in termination and summary judgment is GRANTED on this issue.

In summary, Plaintiff's motion for partial summary judgment is GRANTED as to finding Defendants are employers under USERRA, military service is encouraged by Missouri public policy, and Defendants did not provide Plaintiff notice her actions could lead to termination. Plaintiff's motion is DENIED as to the issue of whether Defendants took reasonable efforts to help Achterberg become qualified for her position and whether her termination was reasonable.

**Conclusion**

Defendants' motion for partial summary judgment (Doc. 51) is GRANTED IN PART and DENIED IN PART as discussed above. Plaintiff's motion for partial summary judgment (Doc. 55) is GRANTED IN PART and DENIED IN PART as discussed above.

**IT IS SO ORDERED.**

Date: November 7, 2017         /s/ Greg Kays
                               GREG KAYS, CHIEF JUDGE
                               UNITED STATES DISTRICT COURT